# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TREVOR SINGLETON, individually and on behalf of all others similarly situated, | Case No: **5:15-CV-0474 (GTS/TWD)** |
|  | **Judge Brenda K. Sannes** |
| Plaintiff, | **Magistrate Judge Terese Wiley Dancks** |
| vs. |  |
| FIFTH GENERATION, INC., d/b/a TITO'S HANDMADE VODKA, |  |
| Defendant. |  |

## <u>DEFENDANT FIFTH GENERATION INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES</u>

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Fifth Generation, Inc. ("Responding Party"), hereby sets forth its objections and responses to Set One of Interrogatories propounded by the Plaintiff, Trevor Singleton ("Plaintiff"), as follows:

## PRELIMINARY STATEMENT

The following responses and objections are based only upon information presently available to and specifically known by Responding Party. Facts and evidence now known may be imperfectly understood. Discovery and investigation are continuing. Responding Party reserves the right to amend, add to, delete from, or otherwise modify or supplement each response set forth herein, and/or to make such claims and contentions as may be appropriate once Responding Party has concluded all discovery and has ascertained all relevant facts and information.

Except for explicit facts admitted herein, if any, no incidental or implied admissions are intended or should be construed hereby. The fact that Responding Party provides a response to any interrogatories should not be taken as an admission that Responding Party accepts or admits the existence of any facts set forth or assumed by such interrogatories, or that such response constitutes admissible evidence. The fact that Responding Party provides a response to part or all of any interrogatories is not intended and shall not be construed to be a waiver by Responding Party of all or any part of any objection to any such interrogatories.

Responding Party's responses are made without waiver of the following rights, but, on the contrary, are intended to preserve and do preserve the following:

(i)     the right to raise all questions of authenticity, foundation, relevancy, materiality, privilege and admissibility as evidence for any purpose of the information

1

identified in response to the interrogatories which may arise in any subsequent proceedings in, or trial of, this or any other action;

(ii) the right to object on any ground to the use of said information identified in response to the interrogatories in any subsequent proceeding in, or trial of, this or any other action;

(iii) the right to object on any ground to the introduction into evidence of said information identified in response to the interrogatories;

(iv) the right to object on any ground at any time to other discovery involving said information; and

(v) the right to amend or supplement this response in the event that any information is unintentionally omitted. Inadvertent identification or production of privileged documents or information by Responding Party is not a waiver of any applicable privilege.

This Preliminary Statement is incorporated into each response set forth below.

## GENERAL OBJECTIONS

Responding Party makes and hereby incorporates by reference the following general objections, whether or not separately set forth, in response to each interrogatory, to the extent the interrogatory:

(i) invades the attorney-client privilege and/or attorney work-product doctrine;

(ii) seeks information regarding and/or the identification of documents not within Responding Party's possession, custody, or control;

(iii) attempts or purports to impose an obligation on Responding Party to provide a response for or on behalf of any other person or entity;

2

(iv) seeks information regarding and/or the identification of documents which are publicly available and/or uniquely or equally available to propounding parties;

(v) violates any applicable right to privacy or protection of commercially sensitive information;

(vi) is overbroad, and/or seeks information that is neither relevant to this action, nor reasonably calculated to lead to the discovery of admissible evidence; and

(vii) attempts or purports to impose obligations exceeding those authorized or imposed by the California Code of Civil Procedure or other state or federal law.

Responding Party further objects on the grounds of unduly burdensome and harassing, to the extent the interrogatories seek the identification of emails or other electronically stored information ("ESI") that is stored in media not readily accessible or reasonably likely to contain responsive ESI.  Responding Party will not search media that is inaccessible or overly burdensome to restore and search (e.g., disaster recovery tapes).  Further, Responding Party objects to the interrogatories on the grounds of unduly burdensome and harassing, to the extent the interrogatories purport to impose any e-discovery obligations beyond the protocols for review and production identified in Responding Party's concurrently served responses to Requests for Production of Documents, Set One.

The responses provided herein, and all documents and information identified in response to interrogatories, are based on information known at this time, and are made without prejudice to Responding Party's right to amend and/or supplement these responses, as necessary.

# RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1:

Please state the name, address, and contact information for any person who You believe was acting on behalf of the Alcohol and Tobacco Tax and Trade Bureau, including its predecessor in interest, the Bureau of Alcohol, Tobacco, Firearms and Explosives, that visited Your facilities and/or distillery as part of the COLA approval process.

## RESPONSE TO INTERROGATORY NO. 1:

Subject to the Preliminary Statement and General Objections, Responding Party responds as follows:

Fifth Generation objects to the phrase "as part of the COLA approval process" as vague and ambiguous. For purposes of this response, Fifth Generation interprets that phrase to mean the 2005-06 site visit to determine whether a COLA should be issued, or whether a previously-issued COLA should be limited or revoked. With that understanding, Fifth Generation responds as follows: Mike Littlejohn, who, on information and belief, retired from the Department of Treasury in 2011 and works at Alex Tong, Certified Public Accountants, 101 E. Park Blvd., Ste. 865, Plano, TX 75074. Furthermore, pursuant to Federal Rule of Civil Procedure 33(d)(1), Responding Party exercises its option to refer Plaintiff to Section A of Responding Party's initial disclosures, as well as to responsive, non-privileged documents that Responding Party will produce pursuant to the Court's March 24, 2016 Protective Order pertaining to that site visit and the COLA process generally, which may contain last known contact information for other persons involved in the 2006-06 audit.

## INTERROGATORY NO. 2:

Please state the following (in Excel format) concerning Tito's, broken down by: (i) product (via Universal Product Code), (ii) state and region, (iii) week, month and year; and (iv) per each of Your customers (including retail establishments, distributors, and others):

a.  Your gross sales in dollars;

b.  the number of units sold by You;

c.  average price charged by you for Tito's;

d.  Your cost of goods sold for Tito's using GAAP;

e.  other costs allocated to each product that are direct and indirect costs using GAAP;

f.  Your gross profit defined as sales less cost of the goods using GAAP;

g.  Your net profit defined as sales dollars less cost of goods sold less other operating costs allocated to Tito's using GAAP, but before any charges for interest, taxes, depreciation and amortization;

h.  retail sales in dollars;

i.  number of units sold at retail;

j.  the suggested retail price per unit;

k.  the average wholesale price per unit;

l.  all expenditures associated with the advertising and promotion of Tito's.

## RESPONSE TO INTERROGATORY NO. 2:

Fifth Generation objects to this interrogatory on the ground that it apparently seeks discovery of information regarding retail purchases by consumers other than Mr. Singleton. As currently postured, this is a one plaintiff case, and Fifth Generation has no information, apart

from the allegations in the Complaint, regarding Mr. Singleton's purchase practices with respect to Tito's Handmade Vodka, or what advertising he claims he saw or where he saw it. Any discovery with respect to retail sales outside New York is inappropriate, because N.Y.G.B.L. §349 only applies to sales made in the State of New York, and Plaintiff has offered no legal justification for applying New York tort law to statements made outside the State of New York. Discovery of any information regarding purchases by other New York consumers is premature unless and until a class is certified, and there is plenty of time between the class certification briefing and the discovery cutoff to conduct such discovery, if necessary. For now, the burden of attempting to produce such information, which would fall entirely upon Fifth Generation, is unjustified, since Mr. Singleton has no standing to recover or pursue claims for any other purchasers unless and until a class is certified.

Fifth Generation further objects to this request on the ground that it seeks "profit" information that is beyond the proper scope of discovery. Plaintiff's theory of "injury," as stated in the Complaint is that he allegedly paid an unspecified "premium" retail price for Tito's Handmade Vodka. This theory has nothing to do with Fifth Generation's own profitability, its costs, its margins, or anything else. For example, Plaintiff's "retail price premium" theory would be the same whether Fifth Generation's wholesale price was break even, or even if it sold at a loss.

Subject to and without waiver of the foregoing objections and general objections, Fifth Generation responds that it has no information relating to any retail purchases made by Mr. Singleton.

## INTERROGATORY NO. 3:

Describe any changes you have made or plan to make to the Labels on Tito's or Tito's

Advertising since the filing of the Complaint in this action.

**RESPONSE TO INTERROGATORY NO. 3:**

No changes have been made to the labels for Tito's Handmade Vodka since the Complaint was filed in this case. With respect to advertising, pursuant to Rule 33(d), Fifth Generation is producing documents consisting of representative samples of advertisements that were placed in market and therefore could have been viewed by New York consumers in response to request for production number 1, which speak for themselves.

**INTERROGATORY NO. 4:**

Identify any third party vendors, research firms, advertising agencies, marketing firms, consumer survey experts, etc. who in any way assisted, contributed, participated or was related to the consumer or marketing research, creation or modification of the labels and/or the Label Claims and the Advertising of Tito's.

**RESPONSE TO INTERROGATORY NO. 4:**

Fifth Generation objects to this interrogatory as phrased, on the ground that it is hopelessly compound and overbroad. For example, as phrased, it appears to seek information regarding vendors who simply provide services like typesetting, color correction, printing or the like, that have nothing to do with content. With respect to the content of labels and advertising, it is created entirely by internal personnel, without reliance upon consumer surveys, or other outside assistance, other than placement of advertising, which Fifth Generation regards as beyond the call of the question. For further responsive information, please refer to documents produced in response to request number 2.

**INTERROGATORY NO. 5:**

Identify by title, date and author each marketing survey/report, consumer survey, research report, research brief, analysis, or study (or any similar research) concerning the Labels or the Label Claims including, but not limited to, any such documents relating to the impact of the Labels or Label Claims on the price or sales (including market share) of Tito's.

**RESPONSE TO INTERROGATORY NO. 5:**

Pursuant to Rule 33(d), Fifth Generations' response to this interrogatory consists of documents produced in response to request number 2. Such production is not an admission that such documents conform in whole or in part to the compound description in this interrogatory.

**INTERROGATORY NO. 6:**

Identity all Your suppliers of neutral grain spirit since Your founding in 1995 and the dates from which You purchased from each supplier. For each supplier, please also describe, to Your knowledge, the process whereby the neutral grain spirit at issue is produced.

**RESPONSE TO INTERROGATORY NO. 6:**

Fifth Generation objects to this interrogatory on the ground that it seeks information beyond proper scope of discovery. The two remaining claims for relief in this action are for violation of N.Y.G.B.L. §349 and for intentional misrepresentation. The operative paragraph in the §349 claim is paragraph 44, which states: "The conduct of Defendant alleged herein violates GBL §349 in that Defendant engaged in the unfair acts and deceptive practices as described herein, which included the promotion and advertising of Tito's Handmade Vodka as being 'Handmade' and 'Crafted in an Old Fashioned Pot still' which was deceptive, false and misleading given that the Vodka is actually made by mechanized and/or automated processes in massive buildings containing ten floor-to-ceiling still. Such conduct is inherently and materially

8

deceptive and misleading in a material respect which was known, or by the use of reasonable care, should have been known, to untrue, deceptive or misleading by Defendant." There is no allegation in this paragraph, nor any that precede it, concerning so-called "neutral grain spirit." There is no allegation that the label or any advertising for Tito's Handmade Vodka made any statement or claim about so-called "neutral grain spirit," that §349 required any statement regarding so-called "neutral grain spirit," nor that Mr. Singleton had any knowledge, belief or expectation regarding "neutral grain spirit." Indeed, those words are not included anywhere in the Complaint.

Similarly, the claim for intentional misrepresentation is a claim based upon statements that actually appeared on the label or advertising for Tito's Handmade Vodka. Again, the Complaint does not identify anywhere either the label or advertising referred to so-called "neutral grain spirits." Instead, the operative paragraph in that claim for relief is paragraph 67, which states: "During the relevant period, Defendant intentionally made false representations that Tito's Handmade Vodka was 'Handmade' and 'crafted in an Old Fashioned Pot Still by America's Original Microdistillery' to Plaintiff and the Class. As described herein, Defendant's representations were untrue." These statements likewise have nothing to do with so-called "neutral grain spirits."

In addition to seeking information that is outside the scope of permissible discovery, this interrogatory also seeks information into possible Fifth Generation's raw material suppliers. Such information is not required by law to be disclosed on either the Tito's Handmade Vodka labels or advertising, nor on any other source of information available to consumers at or prior to the time they purchase the product (and thus can form no part of a consumer's interpretation of the label or belief about the product). Such confidential business information is Fifth

Generation's closely-guarded trade secret that derives value from not being known outside the company. Plaintiff's Complaint does not contain any allegation that he suffered a personal injury or other harm from the contents of the bottle such that information about ingredients and their provenance might become discoverable. Based upon the foregoing objections and general objections, Fifth Generation will not respond further to this interrogatory.

**INTERROGATORY NO. 7:**

Describe in detail how Tito's is manufactured, produced, and bottled, and how that process has changed—if at all—since Your founding in 1995. Please include descriptions of the machines used in this process, and the extent, if any, that human beings are involved in the process.

**RESPONSE TO INTERROGATORY NO. 7:**



**INTERROGATORY NO. 8:**

Identify each person, business unit, department, or division at Fifth Generation (or other person or entity acting or purporting to act on Fifth Generation's behalf) involved in or who participated in the development and manufacturing of Tito's. For each identified, state their role and responsibilities.

**RESPONSE TO INTERROGATORY NO. 8:**

Fifth Generation objects to this interrogatory on the ground that, as phrased, it is virtually unintelligible. Responding as best it can, based upon its understanding of the question, Fifth Generation responds as follows: Tito's Handmade Vodka is made according to the discriminating taste standards developed by Tito Beveridge, and those limited production personnel Fifth Generation has trained. The product is taste-tested by Mr. Beveridge and/or those other trained Fifth Generation professionals multiple times at various stages of production prior to bottling.

**INTERROGATORY NO. 9:**

Identify each person, business unit, department, or division at Fifth Generation (or other person or entity acting or purporting to act on Fifth Generation's behalf) involved in or who participated in the advertising or marketing of Tito's. For each identified, state their role and responsibilities.

**RESPONSE TO INTERROGATORY NO. 9:**

Bert Beveridge II, President, VP, Treasurer, Secretary and CEO: Mr. Beveridge is the founder of Fifth Generation, Inc., and is the developer of Tito's Handmade Vodka. Mr. Beveridge has knowledge concerning the contents of advertising, marketing and promotional materials for Tito's Handmade Vodka.

Bryan Plater, VP Finance and Business Operations. Mr. Plater has knowledge of Fifth Generation's interface with the Alcohol and Tobacco Tax and Trade Bureau and Fifth Generation's activities in the certificate of label approval process.

Nicole Portwood, Vice President, Brand Marketing. Ms. Portwood is an employee of Fifth Generation and has knowledge concerning the brand management of Tito's Handmade Vodka, including advertising, marketing and consumer facing communications.

**INTERROGATORY NO. 10:**

Identify each person, business unit, department, or division at Fifth Generation (or other person or entity acting or purporting to act on Fifth Generation's behalf) involved in or who participated in the labeling of Tito's as "handmade", "crafted in an old fashioned pot still", or similar Label Claims as alleged in the Complaint. For each identified, state their role and responsibilities.

**RESPONSE TO INTERROGATORY NO. 10:**

Fifth Generation objects to this interrogatory on the ground that it is vague and ambiguous; Fifth Generation interprets the call of the question not to seek the identity of persons who may have physically attached labels to bottles from time to time. Subject to and without waiver of the foregoing objection and general objections, Fifth Generation responds as follows: Bert Beveridge II, President, VP, Treasurer, Secretary and CEO: Mr. Beveridge founded Fifth Generation, Inc., and is the developer of Tito's Handmade Vodka. Mr. Beveridge has knowledge concerning the origination and various iterations of the product label.

**INTERROGATORY NO. 11:**

Describe the manner and methodology employed in pricing Your Tito's brand vodka during the Relevant Time Period, including any market research undertaken by You that Relate to the pricing of Tito's brand vodka and/or the price at which Tito's brand vodka is sold.

**RESPONSE TO INTERROGATORY NO. 11:**

Fifth Generation objects on the ground that the interrogatory is vague and ambiguous as to what "pricing" information is sought and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Fifth Generation does not sell Tito's Handmade Vodka to retail consumers, and its wholesale pricing has nothing to do

14

with Plaintiff or any theory for alleged damages in this case. To the extent the interrogatory could be interpreted as seeking information regarding retail pricing, it is also beyond the scope of permissible discovery because Fifth Generation does not set retail prices for Tito's Handmade Vodka. The interrogatory is also unduly burdensome because such information is equally available to Plaintiff from third parties, many of whom collect fees for access to such data. To the extent such information has provided by third parties to Fifth Generation, it is subject to restrictions regarding distribution. Fifth Generation further objects to the extent the interrogatory seeks information that is confidential, proprietary, and trade secret. Fifth Generation additionally objects to this interrogatory on the ground that it apparently seeks discovery of information regarding retail purchases by consumers other than Mr. Singleton. As currently postured, this is a single-plaintiff case, and Fifth Generation has no information, apart from the allegations in the Complaint, regarding Mr. Singleton's purchase practices with respect to Tito's Handmade Vodka, or what prices he paid. Discovery of any information regarding purchases by other New York consumers is premature unless and until a class is certified, and there is plenty of time between the class certification briefing and the discovery cutoff to conduct such discovery, if necessary. For now, the burden of attempting to produce such information, which would fall entirely upon Fifth Generation, is unjustified, since Mr. Singleton has no standing to recover or pursue claims for any other purchasers unless and until a class is certified.

Subject to the foregoing objections and general objections, Fifth Generation responds as follows: Fifth Generation's wholesale pricing strategy is straight-forward. It attempts to price its product at wholesale so as to permit retailers to sell it to consumers at a price that Tito Beveridge's friends can afford to drink. This translates, in the aggregate, to retail prices that are generally below comparably-rated vodka brands such as Ketel One, Belvedere and Grey Goose

(to name a few), and at a price comparable to popular, lesser-rated brands like Absolute. Because Fifth Generation does not set retail prices in New York for Tito's Handmade Vodka, the actual retail price will vary from retailer to retailer and within any given retailer from time to time, as different retailers run promotions (whether on Tito's Handmade Vodka or other brands) or otherwise establish retail prices consistent with their own retail pricing philosophies and strategies. Thus, at any given retailer on any given day, Tito's Handmade Vodka may sell above or below any of the above-identified brands, or such of those brands as any given retailers may have on shelf on any given day. But over time and in the aggregate, Fifth Generation seeks to have Tito's Handmade Vodka sold at retail prices below the brands identified above.

In executing on that pricing philosophy, Fifth Generation from time to time has received information from its distributors, sales representatives and downstream retailers. Such information may or may not have been generated by Fifth Generation, and thus it cannot vouch for its accuracy or completeness at any given time, but Fifth Generation has endeavored to take such information into account as it assesses its pricing strategy and its success in market from time to time. Pursuant to Rule 33(d), Fifth Generation is producing such documents as still exist within its procession that contain pricing data.

**INTERROGATORY NO. 12:**

Identify the average retail price that Your Tito's brand vodka sold for during the Relevant Time Period.

**RESPONSE TO INTERROGATORY NO. 12:**

Fifth Generation objects on the ground that the interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Fifth Generation does not sell Tito's Handmade Vodka to retail consumers or set retail prices for

Tito's Handmade Vodka. The interrogatory is also unduly burdensome because such information is equally available to Plaintiff from third parties, many of whom collect fees for access to such data. To the extent such information has provided by third parties to Fifth Generation, it is subject to restrictions regarding distribution. Fifth Generation further objects to the extent the interrogatory seeks information that is confidential, proprietary, and trade secret. Fifth Generation additionally objects to this interrogatory on the ground that it apparently seeks discovery of information regarding sales to consumers other than Mr. Singleton. As currently postured, this is a single-plaintiff case, and Fifth Generation has no information, apart from the allegations in the Complaint, regarding Mr. Singleton's purchase practices with respect to Tito's Handmade Vodka. Any information regarding purchases by other New York consumers is premature unless and until a class is certified, and there is plenty of time between the class certification briefing and the discovery cutoff to conduct such discovery, if necessary. For now, the burden of attempting to produce such information, which would fall entirely upon Fifth Generation, is unjustified, since Mr. Singleton has no standing to recover or pursue claims for any other purchasers unless and until a class is certified. Subject to and without waiver of the foregoing objections and general objections, Fifth Generation responds that, apart from information provided in its response to interrogatory number 11, it has no information relating to the price of any retail purchases made by Mr. Singleton. Fifth Generation itself does not set retail prices in New York, and has not done so at any time from 2011 to the present

**INTERROGATORY NO. 13:**

Identify the average wholesale price that You sold Your Tito's brand vodka for (to Your retail customers) during the Relevant Time Period.

LA 132517945v1

**RESPONSE TO INTERROGATORY NO. 13:**

Fifth Generation objects on the ground that the interrogatory seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Fifth Generation does not sell Tito's Handmade Vodka to retail consumers or set retail prices for Tito's Handmade Vodka, and its wholesale pricing has nothing to do with Plaintiff or any theory for alleged damages in this case. Subject to the foregoing objections and general objections, Fifth Generation responds as follows: Pursuant to Rule 33(d), Fifth Generation's response to this interrogatory consists of documents produced in response to request number 17.

**INTERROGATORY NO. 14:**

Identify how You define the terms "handmade" and "old fashioned pot stills" as used on Your vodka labels.

**RESPONSE TO INTERROGATORY NO. 14:**

The term "handmade" refers to the somewhat unique technique in producing the vodka that, in the opinion of Fifth Generation and many of its consumers, delivers a superior tasting and higher quality product. As detailed in response to Interrogatory No. 7, Fifth Generation uses pot stills, stills of pre-Civil-War design, and the vodka is made by a slow-cooking process that is entirely dependent upon human tasting and judgment. This process, described in response to Interrogatory No. 7, explains what we mean by "handmade" and "old-fashioned pot stills."

**INTERROGATORY NO. 15:**

Describe and identify any studies or analysis You have done relating to the meaning of the terms "handmade" and "old fashioned pot stills."

**RESPONSE TO INTERROGATORY NO. 15:**

Fifth Generation objects to this interrogatory to the extent it would require disclosure of information protected by the work product doctrine. Subject to and without waiver of the foregoing objection or general objections, Fifth Generation responds as follows: None.

**INTERROGATORY NO. 16:**

Identity all consumers You are currently aware of who purchased Your Tito's brand vodka during the Relevant Time Period.

**RESPONSE TO INTERROGATORY NO. 16:**

Fifth Generation does not have any means of identifying retail purchasers, or of matching up third party retail sales data with individual retail consumers. Fifth Generation does have three very limited forms of data by which persons self-identify as consumers (not necessarily purchasers) of Tito's Handmade Vodka. First, from time to time (infrequently), Fifth Generation receives correspondence from individuals who self-identify as purchasers. Pursuant to Rule 33(d), Fifth Generation is producing any such correspondence during the class period from consumers who appear to have been New York residents at the time of corresponding.

Second, Fifth Generation has information for certain individuals who self-identify on Fifth Generation's website (www.titosvodka.com) as "Tito's Tasters." Anyone can self-identify, and the only requirement is that the person must represent that he or she is 21 or older. They do not have to represent that they have actually "purchased" at retail (much less distinguish between on premises or other retail), and thus this information does not reliably identify actual retail purchasers. This communication is generally used to provide recipes, information about upcoming events and sponsorships and the like. "Tito's Tasters" do not earn free product or discounts by signing up. Thus, this list is not like a retail loyalty club or anything of that nature.

*LA 132517945v1*

With those caveats, Fifth Generation is providing a list of "Tito's Tasters" that appear to have been New York residents when they signed up.

Third, the Attitude and Use Studies produced in response to request for production number 2 and interrogatory number 5 contains information of on-line survey responses of limited numbers of persons who self-identify as having consumed Tito's Handmade Vodka. In order to maintain the integrity of the survey, there is no personal identifying information whatsoever that would allow anyone to know or reverse engineer the identity or state of residence of any of the respondents, nor to verify the accuracy of information they self-report.

Pursuant to Rule 33(d), other information comprising Fifth Generation's response to this interrogatory is contained in documents produced in response to request number 2.

DATED:  April 14, 2016

Respectfully submitted,

*/s/  Ricky L. Shackelford*
Ricky L. Shackelford, Esq.
California Bar No. 151262
(Pro Hac Vice)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067
shackelfordr@gtlaw.com

David L. Nocilly (Bar Roll No. 510759)
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Phone Number:  315-218-8000
Fax Number:  315-218-8100
dnocillly@bsk.com

*Attorneys for Defendant*
*Fifth Generation, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2016, I electronically served the forgoing

DEFENDANT FIFTH GENERATION INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF

INTERROGATORIES to the following:

*Shannon L. Hopkins (via E-mail– shopkins@zlk.com)*
*Nancy A. Kulesa (via E-mail– nkulesa@zlk.com)*
*Levi & Korsinsky LLP*
*733 Summer Street, Suite 304 Stamford, CT 06901*
*212-363-7500 212-363-7171 (fax)*


DATED:  April 14, 2016                    Respectfully submitted,

                                          */s/  Ricky L. Shackelford*
                                          Ricky L. Shackelford, Esq.
                                          California Bar No. 151262
                                          (Pro Hac Vice)
                                          GREENBERG TRAURIG, LLP
                                          1840 Century Park East, Suite 1900
                                          Los Angeles, California 90067
                                          shackelfordr@gtlaw.com

*LA 132517945v1*

## VERIFICATION

I, Bryan Plater, declare and state that I have read the foregoing **FIFTH GENERATION INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**. The responses set forth therein, subject to inadvertent or undiscovered error, are based upon and therefore necessarily limited by the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these responses. The responses set forth therein are based on information and documents provided to me. Consequently, I reserve the right to make changes to these responses if it appears at any time that omissions or errors have been made therein or that more accurate information is available. Subject to the limitations set forth herein, the responses are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this _14th_ day of April, 2016.

Fifth Generation, Inc.

By: _____

Bryan Plater
Vice President Finance &
Business Operations

LA 132554776v1

2674876.1 4/14/2016